FILED

MAY 19 2010

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

MODESTO DIVISION

| | |
|---|---|
| In re | Case No. 09-93249-E-11 |
| | Docket Control No. JJE-1 |
| MICHAEL KENNETH NEMEE and | |
| MICHELLE SEOBHAN McKEE NEMEE, | |
| | |
| Debtor(s). | |
| ———————————————— | |
| | Adv. Pro. No. 09-9088 |
| MICHAEL KENNETH NEMEE and | |
| MICHELLE SEOBHAN McKEE NEMEE, | |
| | |
| Plaintiff(s), | |
| v. | |
| | DATE: April 28, 2010 |
| COUNTY OF CALAVERAS, | TIME: 2:30 p.m. |
| | DEPT: E |
| Defendant(s). | |
| ———————————————— | |

**(NOT FOR PUBLICATION)**
**MEMORANDUM OPINION AND DECISION**

The court has been presented with the motion filed by the
County of Calaveras ("County") to dismiss the Second Amended
Complaint for declaratory and injunctive relief filed by Michael
Nemee and Michelle Nemee ("Nemees") concerning certain real
property located in Calaveras County (the "Nemee Property"). This
case was originally filed in the Superior Court of California,
County of Calaveras, and was removed to the federal courts after
the Nemees filed their Chapter 11 bankruptcy case. A second state

court action was also removed to this court, a writ of mandate proceeding addressing the denial of a request of the Nemees to re-zone the Nemee Property.   The writ of mandate proceeding was remanded to state court based upon the representations of the County that the matter was set for trial and a prompt determination of that matter would occur in a specially set state court proceeding before a CEQA Experienced Judge.

Prior to the removal of the Second Amended Complaint in this action, the County had filed two demurrers seeking dismissal of the action, both of which were granted and the Nemees were given leave to amend.   At the time the case was removed to federal court, a third demurrer was pending in state court.   The case having been removed, the County has now filed a Motion to Dismiss the Second Amended Complaint in this court pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, as made applicable to these proceedings by the Federal Rule of Bankruptcy Procedure 7012(b).[1]

<div align="center"><b>OVERVIEW OF FACTS AS STATED IN THE COMPLAINT</b></div>

When considering a motion to dismiss, the court starts its review with the plain language of the complaint.   The United States Supreme Court recently addressed this issue in <u>Ashcroft v. Iqbal</u>, ____ U.S. ____, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).   Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."   In its earlier decision, <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), the Supreme Court held that the

---

[1]/ Unless otherwise stated, all references to the Federal Rules of Civil Procedure shall be to those rules which have been made applicable to these proceedings through the Federal Rules of Bankruptcy Procedure.

Rule 8 pleading standards does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.  Id. at 555.  To survive a motion to dismiss, the complaint must contain sufficient factual matter, except it is true, to state a claim to relief that is plausible on its face.  Id. at 570.

In Iqbal, the Supreme Court discusses the two underlying principles enunciated in Twombly in determining if a complaint should be dismissed in federal court.  First, that while the court must accept all factual allegations in the complaint as true for purposes of a motion to dismiss, the same is not true for legal conclusions.  Mere recitals of the elements of a cause of action do not suffice.  The second element is that the complaint must state a plausible claim of relief to survive a motion to dismiss.  This determination of whether a plausible claim exists is a context-specific task that requires the court to draw on its own judicial experience and common sense.

The following alleged facts can be drawn from the Second Amended Complaint filed by the Nemees:

1.    The Nemees own Real Property located in Calaveras County, California, which for purposes of this Opinion is referenced as the Nemee Property.

2.    The Nemee Property is zoned agricultural by Calaveras County.

3.    Owners of property zoned agricultural in Calaveras County may use the property for agritourism activities.  (This is a mixed factual-legal allegation.)

///

4.    In addition to an olive orchard on the Nemee Property, the Nemees built a golf course on the Nemee Property in or about 2006.

5.    The Nemees believe and believed that the golf course falls within the existing use for the property as currently zoned.

6.    The County believes that the golf course is not within the allowed uses for the existing zoning and have so notified the Nemees.

7.    The Nemees sought to have the zoning changed for the Nemee Property to allow for recreational use, for the creation of a golf resort and other development on the property.

8.    The County denied the application for a change in zoning, and the administrative·process for the requested zoning change has been completed.  Upon the rejection of the requested zoning change, the Nemees filed an action to obtain a writ of mandate, which is now pending in the Calaveras County Superior Court.

9.    After the golf course was constructed, the County increased the property taxes on the Nemee Property based upon the golf course improvements.

10.    The Nemees, having received the interpretation from the Code Enforcement officers that the golf course was not permitted under the existing zoning, appealed that opinion to the Calaveras County Board of Supervisors.  On October 6, 2009, the Board of Supervisors adopted three resolutions, including The Supervisors' Resolution that the golf course on the Nemee Property did not fall within the definition of agritourism.

11.    The Nemees have exhausted all administrative remedies with respect to the issue of whether a golf course as exists on the

Nemee Property falls within the definition of agritourism, and received the final decision from the Board of Supervisors adopting the opinion of the County Code Enforcement officers.

12.   The County confirms in its motion that all administrative remedies have been exhausted with respect to the issue of whether the term agritourism includes a golf course as operated on the Nemee Property by the Nemees.

13.   The County's position is that a commercial golf course is not agritourism and is therefore not a permitted land use on the Nemee Property.  This position was conveyed in a 2009 staff letter sent to the Nemees after their application was denied and throughout the Nemees' administrative appeal and final determination by the County Board of Supervisors affirming the 2009 staff letter.

14.   The County has expressly notified the Nemees that the current use of the golf course on the Nemee Property:

        a.   Constitutes a Code violation as an unpermitted use as currently zoned.

        b.   Must immediately cease.

        c.   Constitutes a County Code violation as a public nuisance.

        d.   Subjects the Nemees to

            i.   Fines of $50 per day,

            ii.   Penalty assessments,

            iii. Criminal citation, and

            iv.   Potential penalty of incarceration in county jail.

///

**RELIEF REQUESTED IN PRAYER OF**
**SECOND AMENDED COMPLAINT**

The Second Amended Complaint requests in its prayer the following relief:

First, for a judicial declaration that the operation of the golf course with less than 75 players at a time is permitted agritourism in an agricultural zone within the County of Calaveras and consistent with its zoning ordinance.

Additionally, that the court issue a temporary restraining order, preliminary injunction, and permanent injunction restraining the County of Calaveras from interfering with, in any way, the Nemees' operation of the olive farm and golf course or requiring the Nemees to attend additional administrative proceedings which challenge the use of the golf course.

In the Motion to Dismiss the County also identifies a further ground by which the Nemees are either seeking relief or supporting the relief requested. Paragraph Thirteen of the Second Amended Complaint, in requesting a judicial determination that the golf course falls within the existing zoning, the Nemees make the disjunctive request that "the County is estopped from denying plaintiff's use of their property as a golf course as 'agritourism'...." While not a model complaint, it is clear that both the County and the court can determine what relief is being sought by the Nemees and the factual basis for which they believe relief is warranted.

///
///
///

## DECLARATORY RELIEF ACTION IS PROPER
## TO DETERMINE THE MEANING OF A LAW

The first question presented to the court is whether a declaratory relief action is proper for the determination of whether the current use of the golf course falls within the existing zoning and language in the zoning ordinance allowing for "agritourism," or as the County contends that the only potential review, if any, is through traditional or administrative mandamus. In federal court, Congress has provided for declaratory relief actions as set forth in 28 U.S.C. sections 2201 and 2202. Section 2201 provides:

> (a) In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(10) of the Tariff Act of 1930), as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

> (b) For limitations on actions brought with respect to drug patents see section 505 or 512 of the Federal Food, Drug, and Cosmetic Act.

Section 2202 provides, "Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."

///

7

1     The right to declaratory relief action was statutorily

2 codified to allow parties to address an actual dispute which may

3 exist prior to the time that either a claim for affirmative relief

4 has ripened, or where the other party entitled to relief has failed

5 to take the necessary steps to enforce the appropriate remedy.  An

6 example of the first would be where the maker of a negotiable

7 instrument which becomes payable at some future date  asserts that

8 endorsements were forged and the instrument is unenforceable.  The

9 payee may properly presently seek declaratory relief to determine

10 the parties' respective rights, rather than waiting a number of

11 years until the instrument becomes due, and then have to address

12 the issue when memories of the events and evidence of the alleged

13 forgery have faded.  The second situation is one in which one party

14 alleges to have certain present rights or alleged violations to

15 assert against another, but fails or refuses to bring the

16 appropriate action so that the alleged claims can be addressed.  In

17 such a situation, the party so threatened with alleged violations

18 or breaches can bring a declaratory relief action for a

19 determination of the party's respective rights.

20     The use of declaratory relief action allows parties to

21 minimize damages and address disputes when they arise, even if one

22 of the parties seeks to delay enforcement of his or her rights as

23 a tool to harass or threaten the other.  The right to seek

24 declaratory relief works to diminish the threat of future

25 litigation and prosecution being brandished as a weapon of

26 harassment. Japan Gas Lighter Ass'n v. Ronson Corp., 257 F. Supp.

27 219, 237 (D.N.J. 1966).

28 ///

Similar to a state declaratory relief action, the first requirement in federal court is that the parties meet the constitutional requirement that it be an actual case in controversy. U.S. Const. art. III, §2; 28 U.S.C. §1202. As stated by the United States Supreme Court in <u>Maryland Casualty Co. v. Pacific Coal & Oil Co.</u>, 312 U.S. 270, 273 (1941), a case in controversy exists when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interest, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."

The fact that there may be another proceeding in which the issue could be decided does not bar a party from seeking declaratory relief.    "The tests are whether the issuance of a declaratory judgment will effectively solve the problem, whether it will serve a useful purpose, and whether or not the other remedy is more effective or efficient." <u>Western v. McGehee</u>, 202 F. Supp. 287, 294 (D. Md. 1962) (citing <u>Maryland Casualty Co. v. Boyle Constr. Co.</u>, 123 F.2d 558, 565 (4th Cir. 1941)); 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure §2758 (3rd ed. 1998). The creation of the Statutory Declaratory Relief Act by Congress confers on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants. The propriety of granting declaratory relief depends upon a circumspect sense of the fitness of the procedure to the issues presented.    The Declaratory Judgment Act provides an additional remedial procedure for the court, which is used in the exercise of

///

9

sound discretion.  <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277, 282-283 (1995).

<div align="center">

**A CASE IN CONTROVERSY EXISTS AND THE ISSUE
OF THE MEANING OF THE TERM AGRITOURISM AS USED
IN THE COUNTY ORDINANCE IS RIPE FOR DETERMINATION**

</div>

In its Motion to Dismiss the County contends there is no case or controversy to be presented to the court, and no ripe dispute exists for determination.[2]  Contrary to this contention, from the face of the complaint and the exhibits to the complaint, it is clear that a controversy exists and it is ripe for determination. First, both parties agree that all administrative remedies have been exhausted.  In addition to that allegation in the complaint by the Nemees, the County so concurs in the Motion to Dismiss. (County Memorandum of Points and Authorities ("CMP & A") 3:10-12, 7:5-9, Mar. 31, 2010.)

The County next argues that there is no present dispute between the parties, merely a potential theoretical dispute.  The County's own pleadings, as well as the complaint and exhibits, clearly show that this contention is unsustainable.  Starting with the County's pleadings, it asserts in the Motion to Dismiss the following:

1.    The County's position is that a commercial golf course is not agritourism and is therefore not a permitted land use on

---

[2]   At oral argument the County indicated that it was not intending to argue that the issue was not ripe given the most recent determinations by the Board of Supervisors.  Given that the Points and Authorities expressly address the issue in the context of the demurrers filed prior to the case being removed and it could be interpreted that the argument is that the issue is not "ripe" because the Nemees were not pursuing an administrative mandamus action in state court concerning the meaning of the ordinance at issue, the court addresses the case in controversy and ripeness issues in this Motion to Dismiss.

<div align="center">

10

</div>

1  plaintiffs' property. (CMP & A, pg. 2:13-17.)

2      2.   The County conveyed this position to the Nemees in a 2009

3  staff letter after the Nemees' application to change zoning was

4  denied, as well as throughout plaintiffs' administrative appeal and

5  final determination by the County Board of Supervisors of the 2009

6  staff letter. (CMP & A, pg. 2:13-17.)

7      3.   "Their [Nemees'] use [golf course] is currently illegal

8  under the County Code. . . ." (CMP & A 3:2.)

9      4.   "On May 15, 2009, Brent Harrington, interim community

10  development director, notified plaintiffs in writing that continued

11  use of their property as a golf course was in violation of their

12  existing zoning." (CMP & A 6:3-5.)

13      5.   "The County has always taken the position that a

14  commercial golf course is not allowed in the AP zoning

15  district...." (County Reply 9:7-8, Apr. 22, 2010.)

16      In addition to statements in the County's pleading and the

17  complaint, the parties have also referenced as Exhibit I of the

18  Complaint which is identified as the June 9, 2009, letter from Todd

19  Barr, Calavares County Code Enforcement Officer, to the Nemees

20  which states:

21      6.   The use of the Nemee Property as a golf course

22  constitutes a Code violation as an unpermitted use as currently

23  zoned.

24      7.   The use of the Nemee Property as a golf course must cease

25  immediately.

26      8.   The use of the Nemee Property as a golf course

27  constitutes a County Code violation as a public nuisance.

28      9.   Failure to comply with the County's interpretation of the

11

existing zoning for the Nemee Property may result in legal action taken against the Nemees.    Failure to comply with the County's interpretation of the existing zoning for the Nemee Property can subject the Nemees to:

        a.    Fines of $50 per day,

        b.    Penalty assessments,

        c.    Criminal citation, and

        d.    Potential penalty of incarceration in county jail.

For purposes of the Motion to Dismiss, it appears indisputable that there is a real controversy between the County and the Nemees concerning the existing use of the property as a golf course.    The court cannot find the County's arguments persuasive given the County has expressly and unequivocally advised the Nemees that the use of the property as a golf course is illegal, and that by failing to cease to do it the Nemees are subject to civil and criminal penalties, including incarceration.    It is also clear that the County contends that the use of the property does not fall within the current zoning restrictions.    There appears to be a real controversy over the meaning of the ordinance.

## DECLARATORY RELIEF IS THE PROPER REMEDY TO OBTAIN THE DETERMINATION OF THE MEANING OF THIS ORDINANCE

The County argues that because there was an initial determination by a County Code Enforcement Officer, which was subsequently upheld and made final by the County Board of Supervisors after a public hearing, the only recourse available to the Nemees is to seek a writ of mandate.    The points and authorities in support of the Motion to Dismiss includes numerous citations to cases holding that a review of the decision making

process or a discretionary decision of a county is through a writ of mandate.   In all of the cases cited by the County, the issues presented were a review of the process by which the county determined to issue or not issue use permits, zoning changes, or other discretionary processes.   The cases also include those in which the plaintiff sought to overturn a determination by the counties, such as the enactment of a general plan.   In <u>State of California v. Superior Court of Orange County</u>, 12 Cal. 3d 237, 524 P.2d 1281 (1974), the California Supreme Court addressed various contentions by a developer that the California Coastal Zone Conservation Commission's denial of a permit to develop property was improper.   The third cause of action in that case sought a declaration from the court that it did not need a permit from the Commission or that it was entitled to a permit because it had a vested right to do so without such a permit.   The California Supreme Court upheld the dismissal of the complaint in that case not because the court determined that declaratory relief was the improper procedure, but that the developer had not yet sought and obtained a determination from the Commission whether it concurred that such rights existed.   Thus, the claim was not ripe to be determined by the court under the State declaratory relief provisions.

A review of other authorities cited by the County demonstrates that the contention a court's jurisdiction is limited to determining the meaning of this law and there may only be a traditional or administrative mandamus proceeding is not accurate. This is further supported by the court's review of *Witkin, California Civil Procedure, 5th Edition.* The use of mandamus to

review the acts of governmental entities relates to discretionary acts of such agencies and entities. A summary of the cases surveyed in the relevant sections in Witkin addressing such discretionary acts, including:

a. Compelling mayor to execute contract approved by city council,

b. Compelling awarding of contract,

c. Compelling district attorney to institute proceedings to abate public nuisance,

d. Compelling city officials to perform acts under state law,

e. Compelling water district to perform contract for water services,

f. Compelling public officer to issue bonds,

g. Compelling county to bargain in good faith,

h. Compelling zoning administrator to enforce planning commission resolution,

i. Compelling district attorney to commence judicial forfeiture action,

j. Compelling county to halt connection of water service,

k. Compelling city to include overtime premium in pay calculation,

l. Water Resources Board review of regional board decision not to remove prohibition of wastewater discharge from regional plan,

m. Challenge by developer that city required underground utilities,

1        n.    Denial of permit application,

2        o.    University's denial of application to participate

3              in early retirement program,

4        p.    Award of public works contract,

5        q.    Denial of tenure at a state university,

6        r.    Decision not to hire person for civil service job,

7              and

8        s.    Establishment of regulations,

9 *Witkin California Procedure, 5th Edition,* Chapter XII Extraordinary

10 Writs, §§91, 269.

11    With respect to administrative mandamus proceedings, the

12 nature of such governmental discretionary acts subject to that form

13 of review include:

14        a.    Whether probationary employee was entitled to a

15              hearing,

16        b.    Challenge of a registration fee assessed by the

17              Department of Motor Vehicles,

18        c.    Review of timber harvest plan adopted by

19              governmental agency, and

20        d.    Challenge of State policy for long-term involuntary

21              mediation of state prisoners.

22 <u>Id.</u>, §268.

23    The Motion to Dismiss, and the opposition spend much time

24 discussing the denial of the application to re-zone the property as

25 recreational, which is not at the present time before this court.

26 The County attacks many of the factual issues which it asserts

27 either cannot be proven by the Nemees or to which they assert there

28 is overwhelming evidence to the contrary, which "overwhelming

evidence" to be weighed and determined is not properly before the court on a motion to dismiss. When all of the clutter of the argument is removed, the question that the Nemees have put before this court is what does the term "agritourism" mean in Calaveras County Code Sections 17.06.0151 and 17.18.020. The court is not being asked to direct the County to engage in any certain conduct and is not being asked to overrule a zoning ordinance or other enactment made by the County. The Nemees are not asking the court to order the County to issue a use permit or otherwise direct that the County engage in any specific conduct with respect to this question. The sole question asked is what is the legal meaning of the word agritourism in the County ordinance.

The County further argues that a determination as to the meaning of this law (the Ordinance) has already been made by the County Board of Supervisors, and as such, any determination as to the meaning of this law is beyond the scope of this court's jurisdiction. Rather, the County contends that at best this court would be limited to conducting a review under the administrative mandamus principles to determine if the process used by the County was correct in coming to its conclusion of the legal meaning of the term agritourism.

In making such arguments, the County misstates the roles of the various branches of government. The County has enacted a law, the zoning ordinance and the permitted uses for property zoned as agricultural. Within that law, the County permits activities that are agritourism. There now exists a dispute about what that word means. The County Board of Supervisors ultimately has formally spoken on behalf of the County, stating the County's official

position to be is that the existing law does not include a golf course as now exists on the Nemee Property.

This purported pronouncement of how the Board of Supervisors interprets the law was not the enactment of a zoning ordinance, issuance or denial of a use permit, approval of an alternatively permitted use, or other discretionary act.  It is nothing more than a naked statement of how the County (on a 3-2 vote of the Supervisors) believes the law should be interpreted by the judicial branch of the government.

Determination of what the law actually states resides in the judicial branch of government not the legislative or executive. While the courts do not interfere in the legislative process by which the County determines its zoning ordinances, except to the extent as required to make sure that the counties comply with the constitutional and statutory requirements, once the legislation has been enacted it is ultimately the courts which make the final determination as to issues of law.

The County is correct in its assertion that the California courts have been consistent in holding that the judiciary is to give weight to the agencies' opinion as to the meaning of the zoning ordinance unless it is clearly erroneous or unauthorized. Stolman v. City of Los Angeles, 114 Cal. App. 4th 916, 923-924, 8 Cal. Rptr. 3d 178 (2003).  In so stating, the California courts are equally clear that an agency's opinion as to what the zoning ordinance means is not determinative.   Though the agency responsible for issuing, maintaining, and enforcing the zoning ordinance may well have some of the best information concerning how that ordinance should be interpreted, that opinion is used by the

1   court to determine the substance of the law. Id. at 928.

2       In concluding that a declaratory relief action properly lies
3   in this case to determine the question of the meaning of the term
4   agritourism, that determination is not made through a motion to
5   dismiss on the adequacy of the pleadings. It must be presented to
6   the court using the appropriate procedures in federal court for
7   such issues. Whether the parties believe they need to have a
8   trial, or that the issues may be resolved by summary judgment or
9   other proceeding short of a trial, such is left to the
10  determination of the respective parties.

11              **THE SECOND AMENDED COMPLAINT ADEQUATELY PLEADS**
12                  **A PLAUSIBLE CLAIM FOR ESTOPPEL**

13      The County argues further that to the extent that a claim for
14  estoppel is being made by the Nemees, they have failed to
15  adequately plead the elements of estoppel. At this early stage of
16  the pleadings, one has to be careful to distinguish between
17  plausibly pleading a claim for estoppel and whether the Nemees can
18  actually successfully prove a case for estoppel. The County cites
19  to Golden Gate Water Ski Club v. County of Contra Costa, 165 Cal.
20  App. 4th 249, 80 Cal. Rptr. 3d 876 (2008), for a statement of the
21  basic elements for equitable estoppel. The four elements of
22  equitable estoppel as established under California law are as
23  follows:

24      1.  The party to be estopped (County) must be apprised of the
25  facts;

26      2.  For the County to be estopped, the County must contend
27  that its conduct shall be acted upon or must act in a way that the
28  party asserting the estoppel had a right to believe it was so

                                    18

intended;

3.   The other parties (Nemees) must be ignorant of the true state of facts, and

4.   The Nemees must rely upon the conduct to their injury.

The Nemees do not contest this statement of California law or that another standard is appropriate under the circumstances.

In considering whether the Nemees assert facts such that a claim for equitable estoppel is plausible, the court identifies the following facts alleged with respect to each element of the claim for estoppel.

1.   The County must be apprised of the facts.

      a.   The County, through its representatives, knew since 2003 that the Nemees were in the process of constructing the golf course on the Nemee Property. Second Amended Complaint, Paragraph 13.

      b.   The County told the Nemees that they did not need permits to continue with the golf course construction.[3] Second Amended Complaint Paragraphs 5, 7, and 13.

      c.   Upon construction of the golf course, the County increased the value of the property of the golf course improvements, and increased the amount of tax that was being assessed against the property by the County.  Second Amended Complaint, Paragraph 13.

---

[3] Though the Second Amended Complaint does not expressly state that the permits at issue related to the construction of the golf course, given the placement and context of this allegation, it is a fair inference to draw that the permit referenced is that for the golf course.

d.   The Calaveras County director of community development attended a meeting or meetings with the potential lenders for the Nemees to promote the obtaining of financing to proceed with the golf course improvements.  Second Amended Complaint, Paragraph 13.

2.   The County must intend its conduct to be acted upon, or must act in such a way that the Nemees had a right to believe such was intended.

a.   The Calaveras County director of community development attended meetings to promote the obtaining of financing by the Nemees to make the golf course improvements.  Second Amended Complaint, Paragraph 13.

b.   The County was aware of the improvements and was in communication with the Nemees while they were being made.  Second Amended Complaint, Paragraphs 7, and 13.

c.   Upon completion of the improvements, the County increased the assessment on the property for the values of the improvements, and thereby increasing the property taxes on the property for the County. Second Amended Complaint, Paragraph 13.

d.   Unnamed representatives of the County made representations and took actions to allow the Nemees to spend $7 Million for the development of the golf course during the period of 2003 through 2009.  Second Amended Complaint, Paragraph 13.

20

3.   The Nemees must be ignorant of the true facts.

    a.   The Nemees state they believed that the agricultural zoning of the olive farm would also support their use of the golf course as constructed under agritourism. Second Amended Complaint, Paragraphs 5, 7, and 12.

4.   The Nemees must have relied upon the representations to their injury.

    a.   The Nemees allege that they have spent $7 Million for the development of the golf course, which the County now states is illegal and the use of which subjects the Nemees to fines, penalties, criminal incarceration. Second Amended Complaint, Paragraph 13.

Though not artfully stated, the Nemees allege facts which, if taken as true, support a plausible claim for estoppel. As the County notes in its motion and reply brief, a party may well face daunting odds to establish equitable estoppel against the governmental entity in a land use case. But the fact that there may be daunting odds does not prevent a party from having the opportunity to prove a case for estoppel. From the Second Amended Complaint the County can identify the events and the basis by which estoppel is asserted, when the alleged representations were made, and the parties from the County who made such representations. The specific details are not required in the complaint, but can be promptly and specifically ascertained through discovery.

///

///

**THE NEMEES FAIL TO STATE A CLAIM FOR INJUNCTIVE RELIEF**

In the caption of the Second Amended Complaint reference is made to injunctive relief being sought.  In paragraph 16, the general statement is made that "unless the County is restrained Plaintiffs believe they will have to defend additional administrative proceedings which beg the ultimate question presented in this case."  In the prayer, a request is made for injunctive relief restraining the County from "interfering with, in any way, plaintiffs' operation of the olive farm and golf course or requiring plaintiffs to attend additional administrative proceedings which challenge the use of the golf course."

Before addressing the specific objection as stated by the plaintiff, the court first notes that the requested relief is not tailored to specific conduct or events.  The prayer requests that a permanent injunction be issued to free the Nemees from any action taken by the County with respect to their property.  The complaint does not allege any facts or basis by which the Nemees could own the property and be free to use it in any way, at any time, in any manner, for the operation of an "olive farm" and "golf course," whatever those terms may mean.  Additionally, the Nemees request a federal injunction barring the County from ever conducting any administrative proceedings which "challenge" the use of the golf course.  The court cannot ascertain from this part of the pleading, to the extent that the prayer of a complaint is part of the affirmative pleading, what allowable injunctive relief the Nemees are requesting.

In paragraph 16 of the complaint, the Nemees appear to plead that the court needs to restrain the County from conducting

otherwise appropriate administrative proceedings because the Nemees cannot afford to participate in such proceedings.  Injunctive relief is not granted based upon the economic ability of a party to participate in appropriate and authorized administrative proceedings.  The County may very well have appropriate proceedings to commence concerning the Nemee Property and the use of the property, even if there is a permitted golf course use within the existing zoning.

The County's Motion to Dismiss focuses on the fact that the elements for a preliminary injunction are not shown in the complaint.  Neither a temporary restraining order nor preliminary injunction are issued based upon the complaint, but a plaintiff must file a separate motion seeking the issuance of a preliminary injunction, and a temporary restraining order if one is necessary pending the hearing on the preliminary injunction.

In seeking injunctive relief the plaintiff must show, and plead, the elements for such relief which are:

1.    That the plaintiff has suffered an irreparable injury,

2.    That remedies available at law, such as monetary damages, are inadequate to compensate for that injury,

3.    Considering the balance of hardships between plaintiff and defendant, a remedy in equity is warranted, and

4.    That the public interest would not be disserved by issuance of the injunctive relief.

Acumed, LLC v. Stryker Corp., 551 F.3d 1323, 1327 (Fed. Cir. 2008) (quoting eBay, Inc. v. MercExchange, LLC, 547 U.S. 388 (2006)); N. Scheyenne Tribe v. Norton, 503 F.3d 836 (9th Cir. 2007).

The Second Amended Complaint filed by the Nemees does not

directly or indirectly plead facts sufficient for the court to find that a plausible claim injunctive relief is set forth by the Nemees.   While the court was able to ferret out from this Second Amended Complaint the various elements according declaratory relief and a theory for equitable estoppel, it cannot ferret out the elements for injunctive relief.

Though the complaint can be read to state that the Nemees face and have suffered economic harm, there is nothing in the complaint alleging that they are suffering irreparable injury.   As to the second element, again the complaint does not indicate that remedies at law are adequate such that the court should provide the extraordinary equitable remedy of injunctive relief against the County.

Third, there is no allegation concerning the balancing of the hardships between the County and the Nemees for injunctive relief. This third element is even harder to decipher since the requested injunctive relief is so open ended it could be read to literally bar the County from ever exercising any of its appropriate authority over the Nemee Property or the Nemees' use of that property so long as that use related in some way to olive farming or the golf course.   Finally, with respect to the fourth element, there are no allegations concerning the public interest will be served or subject to a disservice by the granting of the requested injunctive relief.

The court grants the motion with respect to a claim for injunctive relief and it is stricken from the complaint.   Because this is the Second Amended Complaint, the claim for injunctive relief is stricken without leave to amend, except as may be allowed

24

1  by the court pursuant to subsequent order.

2  <center>**THE COUNTY FAILS TO ESTABLISH THAT**
**THE NEMEES' DECLARATORY RELIEF ACTION**
3  **IS BARRED BY THE STATUTE OF LIMITATIONS**</center>

4  The County's motion based on the expiration of the statute of

5  limitations to challenge the adoption of the agricultural zoning is

6  denied.  With a two paragraph argument, the County argues that the

7  90-day statute of limitations in which to challenge that ordinance

8  has   long   expired   since   the   ordinance   to   provide   for   the

9  agricultural zoning for this property was last amended in 2005.  As

10  discussed above, the Nemees are not challenging the enactment of

11  the  zoning  ordinance,  but  seek  a  declaration  from  this  court

12  whether the existing use is within the legal meaning of the term

13  agritourism as used in the County ordinance.  It may be that this

14  argument was raised by the County out of an abundance of caution,

15  because of the inartful drafting of the complaint, or as a make-

16  weight argument.  For whatever reason this basis was given, it is

17  denied.

18  <center>**CONCLUSION**</center>

19  The Motion to Dismiss filed by Calaveras County is denied with

20  respect to the claims for declaratory relief and global estoppel,

21  and the County shall file a responsive pleading to the complaint

22  within 21 days of the issuance of this order on the motion.  The

23  motion  to  strike  is  granted  with  respect  to  any  claim  for

24  injunctive relief in the Second Amended Complaint, any claim for

25  injunctive relief is stricken, and no leave to amend is granted the

26  Nemees.  If further amendments are sought to the complaint by the

27  Nemees, then they shall seek relief from the court to so amend the

28  complaint as provided under the Federal Rules of Civil Procedure

<center>25</center>

and Federal Rules of Bankruptcy Procedure.

The court shall issue a separate order granting in part and denying in part the Motion to Dismiss.

Dated: May 18, 2010

RONALD H. SARGIS, Judge
United States Bankruptcy Court