



*POSTED ON WEBSITE*
*NOT FOR PUBLICATION*

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**MODESTO DIVISION**

| | |
|---|---|
| In re<br><br>MICHAEL KENNETH NEMEE and MICHELLE SEOBHAN McKEE NEMEE,<br><br>Debtor(s). | Case No. 09-93249-E-11 |
| MICHAEL KENNETH NEMEE and MICHELLE SEOBHAN McKEE NEMEE,<br><br>Plaintiff(s),<br><br>v.<br><br>COUNTY OF CALAVERAS,<br><br>Defendant(s). | Adv. Pro. No. 09-9088<br>Docket Control No. MDG-2 |

**This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of claim preclusion or issue preclusion.**

**MEMORANDUM OPINION AND DECISION**
**Application for Stay of Enforcement of Judgment Pending Appeal**

Plaintiff Michael and Michelle Nemee ("Plaintiff-Debtors") seek an order staying the enforcement of this court's judgment of December 15, 2011, (Dckt. 179) which entered judgment in favor of the County of Calaveras (the "County"), the defendant, on all issues in the complaint, and entered an injunction in favor of the County prohibiting the use of the property as a commercial golf

course.

As addressed in this Decision, the contention that the Plaintiff-Debtors have a likelihood of prevailing on appeal is based on the grounds as set forth in their motion for new trial which has been denied by the court. The court incorporates herein its Memorandum Opinion and Decision on the motion for new trial, DCN MDG-3, by this reference, rather than copying and repeating the text of that ruling in this Decision.

**Legal Basis for a Stay Pending Appeal**

An appellant seeking a discretionary stay pending appeal under Fed. R. Bankr. P. 8005 must prove:

(1) appellant is likely to succeed on the merits of the appeal;

(2) appellant will suffer irreparable injury;

(3) no substantial harm will come to appellee; and

(4) the stay will do no harm to the public interest.

*Schwartz v. Covington*, 341 F.2d 537 (9th Cir. 1965). "The party moving for a stay has the burden on each of these elements." *In re Shenandoah Realty Partners, L.P.*, 248 B.R. 505, 510 (W.D. Va. 2000).[1]

"A stay is not a matter of right, even if irreparable injury might otherwise result." *Virginian R. Co. v. United States*, 272 U.S. 658, 672 (1926). Instead, the first two factors are the most

[1] Fed. R. Bank. P. 8005 provides that such a motion is ordinarily first presented to the bankruptcy judge. However, a motion for relief may be made directly to the bankruptcy appellate panel or the district court. Given the court's extensive ruling following trial, the court told counsel for Plaintiff-Debtors that taking the appeal directly to the district court could be appropriate rather than merely rearguing the same points to the trial court if a clear error could not be shown.

critical. *Nken v. Holder*, 556 U.S. 418, 129 S. Ct. 1749, 1761 (2009). "It is not enough that the chance of success on the merits be better than negligible. . . . [S]imply showing some possibility of irreparable injury . . . fails to satisfy the second factor." *Id.* (citations and internal quotations omitted). Once an applicant satisfies the first two factors, then the court assesses the harm to the opposing party and weighs the public interest. *Id.*, 129 S. Ct. at 1762.[2]

**Consideration of likelihood of Success on Appeal**

In their Motion for Stay Pending Appeal the Plaintiff-Debtors do not state any grounds with particularity upon which the requested relief is based.[3] Instead, the Motion merely states what will occur if the stay is not issued. The Points and Authorities filed in support of the Motion provide further explanation. Though the court prefers not having to dig through citations, quotations, legal arguments, and factual arguments to discern what the court believes to be the grounds intended by the movant, due to the exigencies of the circumstances, it will do so for this motion.

The Plaintiff-Debtors they feel strongly that the court's determination of the "legislative intent" concerning Agritourism is

---

[2] In their brief, the Plaintiff-Debtors quote a decision of the U.S. Supreme Court which suggests that a rigid application of factors is not appropriate in determining stays pending appeals. Pls.' P. & A. 3:5-8, Dckt. 189. However, the quoted language – "should not be rigidly applied, but require a determination based on the individual circumstances of a particular case." – does not appear in the court's opinion. *See Hilton v. Braunskill*, 481 U.S. 770 (1987). The source of this quotation is unknown. The court will follow the Supreme Court's more recent statement of the law in *Nken v. Holder*.

[3] *See* Fed. R. Civ. P. 7(b), incorporated by Fed. R. Bankr. P. 7007 (requiring that motions state with particularity the grounds and the relief requested).

wrong for all the reasons asserted in the motion for new trial.[4] One factor asserted (respectfully and professionally by the Plaintiff-Defendants) is that this ruling is only one judge's opinion on an issue which was new to that judge, and likely most bankruptcy judges. But in asserting this point, the Plaintiff-Debtors do not state how this shows a likelihood of prevailing on appeal. No legal basis is given for a contention that a trial judge should stay a judgement since it is only one judge's opinion as to the fact or law.

Next, it is asserted that the court "completely ignored circumstances in that [*sic*] clearly indicated that the County of Calaveras was not enforcing agricultural zoning violations of substantial magnitude." This reference is to the owner of Ironstone Vineyards holding "rock concerts and other large, media-type events" in apparent violation of the Zoning Ordinances with no action taken against it. As addressed in the ruling on the motion for new trial, the court considered the use of that one property in the County by that one owner in coming to a decision as to the meaning of the Ordinance as it applies to all owners of property in the County. Further, the court considered whether an illegal use of other property by another owner was the basis for allowing the illegal use of the property by these Plaintiff-Debtors.

The third contention is that the Zoning Ordinance is vague, and therefore unconstitutional, with the Plaintiff-Debtors

---

[4] Though it may be an inadvertent misstatement or evidence of the Plaintiff-Debtors' erroneous approach to properly determining the correct application of the Zoning Ordinances, the court was not merely determining a "legislative intent" for the addition of Agritourism to the permitted uses of the General Agriculture and Agriculture Preserve, but the actual, proper determination of the Zoning Ordinances as enacted.

expressing an intention to appeal this ruling to the United States Supreme Court if necessary. This contention was not raised by the Plaintiff-Debtors at trial and is now being presented for the first time with this Motion for Stay Pending Appeal. The Plaintiff-Debtors assert that there is no greater hypocrisy than this matter now before the court where the County seeks to enforce the law against them while not enforcing it against Ironstone Vineyards.

As addressed in the ruling on the motion for new trial, mere lax enforcement of ordinances is not a violation of a person's constitutional rights. The court did not have, and could not determine, the basis for Ironstone Vineyards conducting the activity on its property, whether a basis existed under any of the other uses permitted under the Zoning Ordinance for such use, or whether the County was lax in letting Ironstone Vineyards engage in such activity on its property. Even if the County allowed Ironstone Vineyard to violate the Zoning Ordinances, that does not allow the Plaintiff-Debtors and other land owners to violate the Zoning Ordinances.

With respect to the Ordinance being vague, the court determined the meaning of the statute using the plain language, including the descriptive, non-exclusive examples provided in the Ordinance.[5] At trial, the Plaintiff-Debtors did not assert that

---

[5] The contention by Plaintiff-Debtors at trial, and as provided in the testimony of their witness Kenneth Churches, the owners of property zoned agriculture in Calaveras County sought to draft a proposed ordinance in a manner which did not enumerate an exclusive list of uses, but only described it generally. Their proposal and the Ordinance as enacted by the Board of Supervisors includes specific, non-exclusive, examples describing the types of enterprises that constitute Agritourism. As addressed in the Memorandum Opinion and Decision after trial and the ruling on the motion for new trial, these examples are properly used under the canons of statutory construction to determine what is meant by the more general definition of

the Ordinances were vague, but that they were crystal clear, with the plain meaning of the Ordinance allowing them to construct and operate a commercial golf course on the property. Only after having lost on their plain meaning arguments do the Plaintiff-Debtors (contrary to the plain meaning arguments made in the Motion for New Trial) assert the Ordinance is vague. Further, extending this argument to its legal conclusion, if the Ordinance allowing for Agritourism is stricken down as unconstitutional, then there is no Ordinance permitting Agritourism or the use sought by the Plaintiff-Debtors.[6]

The final likelihood of prevailing point asserted by the Plaintiff-Debtors is that whether golf course constitutes Agritourism is an issue of first impression that should be resolved by an appellate court. Further, since the court did not find that the use of property by Ironstone Vineyards for concerts all but determinative as to the meaning of Agritourism (with Plaintiff-Debtors ignoring that the use substantially predated the enactment of the Agritourism Ordinances), this court is probably wrong in its determination of the Zoning Ordinance. As set forth in the ruling on the motion for new trial, the use of property by Ironstone Vineyards was considered by the court. The use of that one

---

Agritourism.

[6] In making this argument the Plaintiff-Debtors ignore the evidence and findings of the court that they began and substantially completed the commercial golf course before the 2005 amendments to the Zoning Ordinances which created a permitted use as one of the many permitted uses for property zoned Agriculture. As stated in the Memorandum Opinion and Decision, the Plaintiff-Debtors were aware that the commercial golf course was not legal when they were constructing it through 2005, as did their lender. The evidence presented to the court does not substantiate a contention that but for the Agritourism Ordinance the Plaintiff-Debtors never would have constructed a commercial golf course.

property, by that one owner, and the asserted lack of enforcement by the County, is not determinative of the meaning of the County Zoning Ordinances. No authority is given for such a proposition, and the argument is more closely tied to the harm suffered if the golf course is required to cease operation and the matter is later reversed on appeal.

**Irreparable Injury**

A substantial number of the arguments raised by the Plaintiff-Debtors go to the harm caused by requiring the golf course to cease operating. Reference is made to the millions of dollars that have been invested in the property. However, merely because someone chooses to invest millions of dollars in developing a commercial golf course, which at the time of construction and investment they knew was illegal and not permitted under the Zoning Ordinances as they existed prior to the 2005 addition of Agritourism, does not allow them to construct their own irreparable injury to exempt them from the law.

As discussed at oral argument, Plaintiff-Debtors eschewed the normal land use process of obtaining permits and verifying that the proposed use is allowed under the Zoning Ordinances. Instead they embarked on the development and construction of the commercial golf course banking on being able to subsequently convince County officials to change the zoning on the Property. Only after millions of dollars were borrowed and the commercial golf course constructed did the Plaintiff-Debtors seek a zoning change or appeal an adverse determination by the Planning Department to the Board of Supervisors. To the extent that Plaintiff-Debtors believe there is a potential for irreparable injury, they created the

situation by their "build it first and then seek permission or forgiveness later" strategy.

The Plaintiff-Debtors allege that without a stay they will suffer substantial harm. The Plaintiff-Debtors operate through a limited liability company they own the commercial golf course and intend to use disbursements from the limited liability company, supplemented by their other business activities, to fund the Chapter 11 plan payments. Plaintiff-Debtors allege that the loss of income from the golf course will prevent the payment of electricity bills, irrigation of the fairways and the olive orchard, rental payments on golf carts, and staff to maintain the golf course and olive trees – resulting in irreparable injury to the Plaintiff-Debtors and their property. They conclude that irrespective of the court's decision on the likelihood of prevailing on appeal, if the golf course operation ceases they cannot continue to fund the bankruptcy case, maintain the course, and make payments to the bank.[7] A stay pending appeal is not granted merely because the losing party may suffer an adverse consequence.

Moreover, mere economic losses do not represent irreparable injuries. As the Ninth Circuit states:

---

[7] With respect to the payments being made to the Bank, these were required by the court due to the failure of the Plaintiff-Debtors to pay the senior lien holder and allowing the interest to accrue on the senior loan to the detriment of the Bank. The payments required are only the court's approximation of the interest accruing on the loan secured by the senior deed of trust. Based on the evidence provided to the court, the value of the property was less than the liens against it, and allowing interest to accrue on the claim secured by the senior lien exhausted value in the collateral for the Bank. No payments have been made to the Bank to reduce or stop the accrual of interest on its claim during the pendency of the Plaintiff-Debtors' bankruptcy case filed in 2009.

> Supreme Court case law and some of our own cases clarify that economic damages are not traditionally considered irreparable *because the injury can later be remedied by a damage award*. *See Sampson v. Murray*, 415 U.S. 61, 90, 94 S. Ct. 937, 39 L. Ed. 2d 166 (1974) ("[I]t seems clear that the temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury. . . . The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." (internal quotation omitted)); *Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 ("It is true that economic injury alone does not support a finding of irreparable harm, *because such injury can be remedied by a damage award.*"(emphasis added)); *Caribbean Marine Servs. Co. v. Baldridge*, 844 F.2d 668, 676 (9th Cir. 1988); *Arcamuzi v. Cont'l Air Lines, Inc.*, 819 F.2d 935, 938 (9th Cir. 1987); *Colo. River Indian Tribes v. Town of Parker*, 776 F.2d 846, 850-51 (9th Cir. 1985); *Goldie's Bookstore, Inc. v. Superior Court*, 739 F.2d 466, 471 (9th Cir. 1984) ("Mere financial injury . . . will not constitute irreparable harm *if adequate compensatory relief will be available in the course of litigation.*" (emphasis added)).

*Cal. Pharmacists Ass'n v. Maxwell-Jolly*, 563 F.3d 847, 851-852 (9th Cir. 2009) (emphasis supplied). All of the losses alleged by the Plaintiff-Debtors are economic losses which can be cured through a monetary damage award if they prevail on appeal.

It is further contended that a stay pending appeal is warranted because the County did not seek to kill the golf course while the appeal was pending, but that the stay would "mitigate economic loss should the Plaintiffs be right." It is asserted that if the Plaintiff-Debtors should prevail on appeal, there would be a catastrophic loss to the Plaintiff-Debtors which give no benefit to the County. Therefore, Plaintiff-Debtors contend that the injunction should be viewed as punitive, giving no benefit to anyone, including creditors in the bankruptcy case. Such could be said about almost any injunction, someone has to stop an activity which was to their economic or personal benefit.

Plaintiff-Debtors assert that they have always believed that they were going to win on the issue of the commercial golf course being Agritourism, and are surprised with how the court determined the case. Since there is a potential for a possible reversal, the court should not kill the seven million dollar investment in this commercial golf course. The Plaintiff-Debtors ask this court to realize that "its analysis certainly could be wrong." Therefore they should be allowed to continue to operate the golf course.

There is little doubt that requiring the Plaintiff-Debtors to cease allowing their limited liability company to operate a commercial golf course on the Property will likely doom their bankruptcy case which is built around the limited liability company continuing operation of the commercial golf course. However, the Plaintiff-Debtors have not presented the court with anything to show that even if they prevail there is an effective reorganization in the offing for the Chapter 11 case which does not include the operation of the golf course by the limited liability company. No reference is made to the monthly operating reports in contending that the commercial golf course operation is necessary to an effective reorganization or the actual finances of the operation of this golf course. The court has not been presented with evidence of a financial operation in the case which can be financially reorganized, only that the Plaintiff-Debtors only possibility of reorganization is with a commercial golf course continued to be operated by their limited liability company.[8]

---

[8] The actual golf course operation, including all revenues, are being held in a limited liability company owned by the Plaintiff-Debtors. This precludes the normal reporting requirements and accountability of a debtor-in-possession or trustee when a business owned by the debtor is operated as part of the bankruptcy estate.

**Substantial Harm to Appellee**

Another factor to consider, if the Plaintiff-Debtors were to obtain a stay pending appeal, is the harm to the County. The Plaintiff-Debtors do not address this factor in their Motion or Points and Authorities directly. As reference in their reply, the general tenor is that the County cannot be harmed because at worst the golf course closes later. If the Plaintiff-Debtors are correct and were to prevail on appeal, then the County would have the Plaintiff-Debtors operating golf course in the County.

The County asserts that allowing the commercial golf court to continue in operation only benefits the Debtors. Granting a stay pending appeal only further prevents the County from fulfilling its obligations to protect the public and enforce its ordinance. In balancing the harm to the County, given the passage of time, and the failure to show harm other than the Plaintiff-Debtors violating the County Zoning Ordinances, the County has not presented the court with financial, health, community, or public safety issues of substantial harm.

**The Public Interest**

The Plaintiff-Debtors do not address the public interest factor which is to be considered. The County asserts that allowing the Plaintiff-Debtors to operate the commercial golf course in violation of the Zoning Ordinances is not in the public interest. The Zoning Ordinances exist to protect the general public, and a stay pending appeal impedes the ability of the County to enforce this Ordinance. The public interest is not served by preventing the enforcement of the law now that the trial has been concluded.

The County further notes that this litigation was commenced in

state court and then removed by the Plaintiff-Debtors to the bankruptcy court as their forum of choice. The automatic stay arising upon the commencement of the case precluded the need for a preliminary injunction to stop enforcement by the County. No bond is required for the automatic stay to be in effect.

**Comments From Non-Parties to the Adversary Proceeding**

David and Hedy Hirsch and Roger and Kathy Gunderson, creditors holding general unsecured claims filed their statements as "parties in interest" in this Adversary Proceeding. Community Bank of San Joaquin has filed its response to the Motion for Stay Pending Appeal, however, it does not state what basis the Bank has for appearing in this Adversary Proceeding. Contrary to the contention of Hirsch and Gunderson, they are not parties to this Adversary Proceeding and are not parties in interest to participate in this Adversary Proceeding. They did not intervene or otherwise obtain permission from the court to insert themselves in this lawsuit. Merely because they are creditors of the Plaintiff-Debtors does not given them standing to appear in this Adversary Proceeding. Hirsch and Gunderson direct the court to 11 U.S.C. § 1109(b) as the authority for them to appear in this Adversary Proceeding.

The express language of this Code section states that a party in interest may "raise and may be heard on any issue in a case under this chapter [11]." A case under Chapter 11 is commenced by the filing of a bankruptcy petition. 11 U.S.C. § 301 and 302. An adversary proceeding is not a "case under Chapter 11," but a separate law suit to which only the parties in that action have standing. Fed. R. Bankr. P. 7001, 28 U.S.C. § 157(a) (federal court jurisdiction for any and all cases under Title 11 and all

proceedings arising under Title 11, or arising in or related to a case under Title 11). A "case" is not an adversary proceeding commenced by a debtor-in-possession or trustee, and creditors do not get to insert themselves in the adversary proceeding unless they intervene as provided in Federal Rule of Civil Procedure 24 and Federal Rule of Bankruptcy Procedure 7024.

Because of the significance of this decision to the bankruptcy case, for which Hirsch and Gunderson are parties in interest, the court has reviewed the pleadings. The position taken by these four creditors suffers from the same substantive defects as the Plaintiff-Debtors. They argue that the court has ignored that portion of the definition of Agritourism stating that the examples are a non-exclusive list. The court did not interpret or apply the list of examples as an exclusive list and limited the definition of Agritourism to only those items. Instead, the court applied the established canons of construction to consider the correct interpretation of this statute. The Plaintiff-Debtors and these creditors choose to ignore the canons of statutory construction and given no consideration to the specific examples placed in the Ordinance defining Agritourism in order to reach their desired conclusion.

The court has addressed the above contention that failure to grant the stay will "kill off" the golf course, as well as the perceived harm to the public in Calaveras County if the golf course is not allowed to continue to operate.

The Community Bank of San Joaquin reminds the court that it is a creditor holding a junior lien secured by the commercial golf and has been forced to wait during this bankruptcy case to enforce its

lien rights. While the Bank's arguments may be relevant to considering a motion for relief from the automatic stay or other contested matter in the bankruptcy case, they are not to this Motion. Whether grounds exist to issue a stay pending appear is not determined by the impact on an individual creditor.

**Impact on Appellate Court - Granting of Temporary Stay**

This court having denied the stay pending appeal, the Plaintiff-Debtors state that they intend to seek a stay pending appeal on an emergency basis before the District Court to which the appeal of the judgment has been taken. As stated in the Decision denying the motion for new trial, the court issued its Memorandum Opinion and Decision after trial several weeks in advance of entering the judgment to afford the Plaintiff-Debtors the opportunity to prepare their post-trial motions and not be forced to do so during the short fourteen-day appeal period following a judgment issued by the bankruptcy court. The court further delayed the effective date of the injunction until January 27, 2012. This was done to avoid a situation where this court was asked to rule on a motion for stay pending appeal hours or days before the injunction went into effect.

The motion for new trial and for stay pending appeal were filed on the twelfth day after the judgment was entered and thirty-seven days after the court issued its Memorandum Opinion and Decision after trial. Though filed, the motions were not set for hearing. When the motions were then set for hearing, the motion for stay pending appeal was not set for hearing until a month after the injunction went into effect. By the time the court caught the apparent calendaring error, there was not sufficient time to have

the motion heard on the court's January 11, 2012 calendar, necessitating the hearing on January 25, 2012. This resulted in the motion for stay being denied three days before the injunction prohibiting the operation of the commercial golf course going into effect.

Though the court does not find a basis for granting a stay pending appeal, the Plaintiff-Debtors have the right to seek such a stay from the District Court hearing the appeal. The process by which the hearing was set before this court has now created an "emergency" to have a motion for stay pending appeal heard by the District Court. This court is mindful of the tremendous caseload of the District Court judges in the Eastern District of California. It has one of the highest caseload in the nation, and the highest on a per active judge basis.

To avoid the Plaintiff-Debtors otherwise unnecessarily disrupting the District Court's calendar and orderly case management, the court grants a temporary stay of enforcement of the injunction through an including February 21, 2012. This allows the Plaintiff-Debtors to promptly file and serve the motion for stay pending appeal, regularly setting it for hearing before that court. This then allows the District Court to consider the motion and opposition in the ordinary course of court business. To the extent that the Plaintiff-Debtors do not promptly file, serve, and set such a motion for hearing, thereby creating a need for an emergency hearing, such will then be left to the District Court in the proper management of its calendar.

///

///

**CONCLUSION**

The court's consideration of this Motion begins with the first two requirements: (1) appellant is likely to succeed on the merits of the appeal, and (2) appellant will suffer irreparable injury. The court accepts the Plaintiff-Debtors contention that if the court does not issue the stay pending appeal and they are not able to continue to operate the commercial golf course, then they will not be able to care for it. The court presumes for the purpose of this motion that the fairways and greens will dry up and the land return to its natural state if the Plaintiff-Debtors' limited liability company is not allowed to continue the operation of a commercial golf course. The Defendant in this action is the Calaveras County, a political subdivision of the State of California. All of the injury asserted by the Plaintiff-Debtors are economic damages, if the County is determined to be wrong and it incorrectly applied its Zoning Ordinances to terminate the operation of the commercial golf course. Those are monetary damages for which compensation can be paid. There is not irreparable injury in this Adversary Proceeding.

However, before getting to the issue of irreparable injury the Plaintiff-Debtors must show that they are likely to succeed on the merits of the appeal. As determined in the Motion for New Trial, the Plaintiff-Debtors have not shown a material error in law or in fact with respect to the determination after trial. Merely asking the court to consider the possibility that another court may reverse is not showing that success on the merits of an appeal is likely. The Plaintiff-Debtors have not called into doubt the analysis of the Zoning Ordinances at issue or a material basis for

their contention that the definitional provision for Agritourism is a grant allowing the use of property in any manner separate and apart from the comprehensive statutory scheme for property zoned General Agriculture or Agriculture Preserve. There is no strong showing by the Plaintiff-Debtors that they are likely to prevail on appeal.

Having considered the factors governing the issuance of a stay pending appeal, the court determines that one is not warranted in this Adversary Proceeding. The Plaintiff-Debtors have not shown that they have a likelihood of prevailing on the appeal.

Because of the potential significant negative impact of the Plaintiff-Debtors having to seek an emergency stay pending appeal to prevent the injunction from going into effect on January 27, 2012, the court grants a temporary stay of the enforcement of the injunction through an including February 21, 2012. This temporary stay is not granted based upon the Plaintiff-Debtors having shown a basis for granting such a stay, but in consideration of the District Court and the matters now pending before it.

This Memorandum Opinion and Decision constitutes the court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52 and Fed. R. Bank. P. 7052.

The court shall issue a separate order consistent with this Decision.

Dated: January 27 , 2012

RONALD H. SARGIS, Judge
United States Bankruptcy Court

This document does not constitute a certificate of service. The parties listed below will be served a separate copy of the attached document(s).

---

Janis Elliott
891 Mountain Ranch Rd
San Andreas, CA 95249-9709

Kristin Hagan
1675 Chester Ave #320
Bakersfield, CA 93301

Brett Price
5080 California Ave #250
Bakersfield, CA 93309

Malcolm Gross
1040 S Mt Vernon Ave #G-316
Colton, CA 92324-4228

Kenneth Foley
37 N Main St #209
PO Box 1269
San Andreas, CA 95249

Michael Nemee
9209 Ospital Rd
Valley Springs, CA 95252

Michelle Nemee
9209 Ospital Rd
Valley Springs, CA 95252

Office of the U.S. Trustee
Robert T Matsui United States Courthouse
501 I Street , Room 7-500
Sacramento, CA 95814