

FILED

JAN 2 7 2012

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

*POSTED ON WEBSITE*
*NOT FOR PUBLICATION*

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

### MODESTO DIVISION

| | |
|---|---|
| In re ) | Case No. 09-93249-E-11 |
| )  | |
| MICHAEL KENNETH NEMEE and ) | |
| MICHELLE SEOBHAN McKEE NEMEE, ) | |
| ) | |
| Debtor(s). ) | |
| ———————————————————— ) | |
| ) | |
| MICHAEL KENNETH NEMEE and ) | Adv. Pro. No. 09-9088 |
| MICHELLE SEOBHAN McKEE NEMEE, ) | Docket Control No. MDG-3 |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| v. ) | |
| ) | |
| COUNTY OF CALAVERAS, ) | |
| ) | |
| Defendant(s). ) | |
| ———————————————————— ) | |

**This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of claim preclusion or issue preclusion.**

### MEMORANDUM OPINION AND DECISION
#### Motion for New Trial or in the Alternative a New Judgment

Michael and Michelle, the Plaintiff-Debtors in this Adversary Proceeding, have filed a Motion for New Trial or in the Alternative a New Judgment[1].  They seek this remedy with respect to a judgment of this court entered on December 16, 2011, which determined that

---

[1] In this Decision, the court references the Motion as a "Motion for New Trial or Amended Judgment," which is consistent with the Federal Rules of Civil Procedure.

the commercial golf course constructed on real property owned by the Plaintiff-Debtors was not permitted under the applicable Zoning Ordinances for Calaveras County, California.[2]  The judgment also enjoins the Plaintiff-Debtors from allowing the operation of the commercial golf course on and after January 27, 2012.  The court's Memorandum Opinion and Decision on which the judgment is based was issued on November 21, 2011.

This adversary proceeding was originally scheduled for a two-day court trial.  That trial extended into three full days, notwithstanding the court and parties having utilized the direct testimony statement procedure as provided under Local Bankruptcy Rule 9017-1.  This procedure, which requires that a party prepare, file with the court, and exchange with the other parties written declarations for the direct testimony of that party's non-hostile witnesses, greatly streamlines the trial process.

The trial extended into three days in large part because of the trial strategy adopted by both parties of allowing argument to be presented to the court as part of the direct questioning process.  This effectively allowed each party to repeatedly make its arguments to the court during the trial.

Following the trial, the court first issued the written ruling in the form of the Memorandum Opinion and on November 21, 2011.  Because the judgment included an injunction requiring the Plaintiff-Debtors to cease the operation of the commercial golf course, the court did not immediately issue the judgment.  Cognizant of the foreshortened appeal period from judgments issued

---

[2]  Unless otherwise stated, references to "Zoning Ordinances" or "Ordinances" are to the ordinances enacted by Calaveras County, California.

by the bankruptcy court (14 days), the court delayed issuing the judgment until December 15, 2011.  This afforded the Plaintiff-Debtors an opportunity to construct well-crafted post-trial motions and requests for stay pending appeal as they deemed appropriate. Further, the court delayed the effective date of the injunction requiring the Plaintiff-Debtors to cease the operation of the commercial golf course until January 27, 2012.  At a status conferences in the bankruptcy case and another adversary proceeding involving one of the litigation counsel for the Plaintiff-Debtors, the court assured counsel that seeking a stay pending appeal from the appellate court would not offend this judge when counsel stated that common courtesy was to first request the stay from the trial court.

The present Motion for New Trial and a related Motion for Stay Pending Appeal were filed with this court on December 22, 2011, 12 days after the entry of the judgment and 37 days after the court issued the Memorandum Opinion and Decision.  Though filed, the Motion for New Trial and Motion for Stay Pending Appeal were not set for hearing as required by Local Bankruptcy Rule 9014-1(b)(1) by the Plaintiff-Debtors.  The Plaintiff-Debtors also failed to designate a docket control number which is used on all pleadings relating to the motion and used by the court to organize the pleadings.  *Id.*, at 9014-1(c).  After the Clerk of the Court notified counsel for the Plaintiff-Debtors of the failure to set the matter for hearing, the Plaintiff-Debtors set hearings on the Motion for New Trial and Motion for Stay Pending Appeal to be heard on February 22, 2012.  Dckt. 193 and 194.

In connection with the Motion for Stay Pending Appeal the

1 court *sua sponte* rescheduled the hearing for January 25, 2012, to
2 allow for that matter to be heard and ruled on before the
3 injunction went into effect.    Dckt. 203.    This was done to avoid
4 the court's ability to consider and address any error which would
5 justify a stay pending appeal being rendered moot by having a
6 hearing on such motion a month after the injunction went into
7 effect and the commercial golf course operation ceased.    The court
8 also ordered counsel for the Plaintiff-Debtors to use specific
9 docket control numbers for both motions.    The Plaintiff-Debtors
10 subsequently requested, and the court granted, the acceleration of
11 the hearing date on the Motion for New Trial so it would be
12 conducted at the same time as the Motion for Stay Pending Appeal.

13 **LEGAL BASIS FOR A NEW TRIAL OR AMENDED JUDGMENT**

14 In bankruptcy cases and adversary proceedings Federal Rule
15 Bankruptcy Procedure 9023 makes applicable the procedure for
16 seeking a new trial or altering or amending a judgment pursuant to
17 Federal Rule of Civil Procedure 59.    A motion for new trial or to
18 amend the judgment must be filed within fourteen days after the
19 entry of the judgment.    In this Adversary Proceeding, the Motion
20 for New Trial or New Judgement was filed on December 28, 2011,
21 twelve days after the entry of the judgment.

22 Though a motion for new trial is addressed to the broad
23 discretion of the court, such a motion should be based on a
24 manifest mistake of fact or error of law, with the court finding
25 substantial reasons before setting aside the judgment.[3]    A motion
26 for new trial should not be granted merely because the losing party

27

28

---

[3] 12 MOORE'S FEDERAL PRACTICE THIRD EDITION § 59.13[3][a], Ball v. Interoceanica Corporation, 71 F.3d 73, 76    (2nd Cir. 1995).

1 can probably present a better case on another trial.[4]    In trials
2 conducted before the court, there are three grounds for granting a
3 new trial: (1) manifest error of law, (2) manifest error of fact,
4 and (3) newly discovered evidence.[5]

5        In considering a motion to alter or amend the judgment, review
6 under Fed. R. Civ. P. 59(e) considers the same factors as a motion
7 for new trial, whether there was: (1) manifest error of fact, (2)
8 manifest error of law, or (3) newly discovered evidence.[6]

9                    **GROUNDS ALLEGED IN MOTION**

10       The court has been presented with one pleading titled "Notice
11 of Motion, Motion, Declaration and Points and Authorities in
12 Support of New Trial or Alternatively, a New Judgment." Dckt. 193.
13 This pleading is not a notice of motion, motion, or declaration,
14 but is a points and authorities. Local Bankruptcy Rule 9014-1 and
15 the Revised Guidelines for Preparation of Documents, ¶ (3)(a),
16 require that the notice of motion, motion, points and authorities,
17 declarations, and exhibits be filed as separate pleadings. Working
18 in a near-paperless environment, counsel preparing and filing with
19 the court an omnibus electronic document comprised of the motion,
20 points and authorities, declarations, and exhibits results in the
21 court receiving an unworkable electronic document. Federal Rule of
22 Civil Procedure 7(b) and Federal Bankruptcy Rule of Procedure 7007
23 require that a motion state with particularity the grounds for

24

25        [4]   *Id.*

26        [5]   *Brown v. Wright,* 588 F.2d 708, 710 (9th Cir. 1978).  *See*
27 *Molski v. M.J. Cable, Inc.*, 481 F.3d 724 (9th Cir. 2007) FN.4.

28        [6]   *Hale v. United States Trustee (In re Basham)*, 208 B.R. 926,
934 (9th Cir. BAP 1997), *affrm.  Hale v. United States Trustee (In re
Bryne)*, 152 F.3d 924 (9th Cir. 1998)

1  seeking the order. Attempting to bury the grounds in a points and
2  authorities filled with citations, quotations, legal arguments, and
3  factual arguments not only makes review of the motion more
4  difficult for the court, but it also can be misused as a strategy
5  to confuse and bewilder the opponent as to what grounds the moving
6  party is really asserting.[7] The court waives, due to the exigency
7  of the circumstances, the failure to comply with the Federal and
8  Local Rules to consider the merits of the Motion.

9      The Motion seeks a new trial or an amended judgment based on
10 an asserted error of law.

11     1.   The Agritourism portion of the original Zoning Ordinances
12 which was a permissive ordinance.

13          a.   While the original zoning ordinances may have
14               stated it was permissive (17.02.010(A)), the
15               Agritourism and amendments to the agriculture
16               zoning portions of the ordinances are not merely
17               permissive.

18     2.   Contrary to the court's opinion, the opinion of an
19 administrator for the County is of little or no weight to interpret
20 these Ordinances.

21     3.   As court admits, a golf course on the olive orchard fits
22 the definition of Agritourism.

23     4.   A plain reading of the definition should be sufficient.
24          a.   The methodology utilized by the court is flawed

25

26     [7] As this court has stated in other proceedings, it is not the
   job of the court to canvas the various pleadings filed by the movant,
27 mine the declarations and exhibits, delve into any other pleadings on
   the docket, and then divine what grounds the movant intended to be the
28 basis for the motion, articulate those grounds, present those grounds
   to the opposing party, and then rule on the grounds which the court
   presumed that the movant intended to assert.

1        because it is premised on the ordinances being
2        permissive.

3        b.    The court failed to address that the statues were
4              enacted at different times is fatal.

5    5.   The Decision fails to address the reason for the
6    ordinance.

7        a.    To help the farms during the severe economic
8              downturn (testimony of Jerry Howard).

9        b.    Not even lip service was provided by the court to
10             this purpose.

11   6.   Ten minutes for oral argument after three days of trial
12   was insufficient for the Plaintiff-Debtors to communicate their
13   contentions to the court.

14       a.    Significance of the fact that the permissive zoning
15             part was adopted 20 years prior to the Agritourism
16             amendment is probably the most significant point
17             missed.

18   The Plaintiff-Debtors assert the following legal arguments in
19   support of their contention that the error exists to warrant the
20   court either granting a new trial or amending the judgment.

21   1.   That portion of the Zoning Ordinance dealing with
22   agriculture, and in particular Agritourism is not a permissive
23   statute.

24   2.   That a specific provision of law takes preference over a
25   conflicting general provision of law.

26   3.   A more recent enactment creates a presumption that the
27   legislature intended a change when it enacted the new law.

28

7

4.    The Agritourism Ordinance is not a permitted use ordinance, but is one in which "any and all activities are permitted unless expressly prohibited or do not fit the definitions contained within the ordinance."

5.    Court referencing multimillion dollar golf courses when that reference is not included in the ordinance shows a bias against "multimillion dollar golf courses, but not against multimillion dollar amphitheaters with rock concerts."[8]

6.    What does a rock concern have to do with agriculture?

### PROPER STATUTORY CONSTRUCTION OF THE
### COUNTY ZONING ORDINANCES

One of the errors of law alleged is that the court has incorrectly construed the Zoning Ordinances for property zoned agriculture to control over the asserted more specific provision (Ordinance 17.06.0151, which defines the term "Agritourism") asserted to be the operative provision to determine the use of property for Agritourism.    California Code of Civil Procedure § 1859 provides,

§ 1859.    The intention of the Legislature or parties

In the construction of a statute the intention of the Legislature, and in the construction of the instrument the intention of the parties, is to be pursued, if possible; and when a general and [a] particular provision are inconsistent, the latter is paramount to the former. So a particular intent will control a general one that is inconsistent with it.

This section cited by the Plaintiff-Debtors does not merely state that any statute or term making a specific reference to a matter

---

[8]    At oral argument, the Plaintiff-Debtors clarified that they were not alleging that the court was biased (determining matters other than on the facts before it and on the law), but that the court did not find Plaintiff-Debtors' witness credible.    Therefore, the court did not agree with the Plaintiff-Debtors' conclusion as to the law and facts.

1   controls over any other provision, but that when a general and a
2   specific provision are inconsistent, then the specific provision
3   will control over the general provision to the extent of such
4   inconsistencies.   In their Motion and supporting argument, the
5   Plaintiff-Debtors do not state how the Zoning Ordinance defining
6   Agritourism is inconsistent with the provisions stating that one of
7   the enumerated permitted uses of property zoned Agriculture is
8   Agritourism.   Rather, it is argued that since Agritourism is being
9   interpreted by the court in a manner which does not allow the
10  Plaintiff-Debtors to construct and operate (through their limited
11  liability company) a golf course, then the Plaintiff-Debtors'
12  determination of what constitutes Agritourism should control and
13  trump the balance of the Zoning Ordinances.

14      The analysis provided by the Plaintiff-Debtors attempts to
15  take a fragment from the rules of statutory construction and make
16  it the sole method of determining the statute.[9]  As discussed, the
17  court starts with giving the words of the statute their "plain,
18  common sense meaning."[10]   When the language of the statute is not
19  ambiguous, the plain meaning controls and the court does not resort
20  to extrinsic sources and other rules.   When the statute cannot be
21  determined by the plain reading of the words, the courts often rely
22  on the canons of statutory construction.   In this process, the

---

25      [9]   This appears to be continuing a practice or strategy utilized
26  by the Plaintiff-Debtors as found by the court in its ruling stated in
    the Memorandum Opinion and Decision.   The Plaintiff-Debtors would take
    a portion of what they were told by one county representative and then
27  restate that fragment of what was said, out of context, as the
    position of the County in a misleading way.

28      [10]   *Kavanaugh v. West Sonoma Cnty. Union High Sch. Dist.*, 29 Cal.
    4th 911, 919   (2003).

9

statute should be interpreted and harmonized with reference to the whole system of the laws of which is a part.[11]

If it is not clear from the face of the statute, the court then proceeds through a series of steps to determine the proper meaning of the statute. Before trumping one part of a statute with another as the Plaintiff-Debtors do, the court first attempts to harmonize the provisions, giving force and effect to each. "In construing statutes, it is the duty of the Court to reconcile, if practicable, apparently conflicting provisions, so as to carry into effect the intention of the Legislature as it appears from the whole Act and from contemporaneous legislation."[12] This basic principle of harmonizing statutes has been established in both California and federal law for a long time and is not subject to any serious dispute. "It is a rule of universal application in construing a statute, that some effect shall be given, if practicable, to every part of it, and that apparent inconsistencies shall be reconciled, if it can be done without torturing the language."[13]

This fundamental rule applies whether determining portions of an individual statute, as statute as part of a specific statutory scheme, or two separate and distinct statutes. "[E]very statute is to be construed with reference to all other statutes of similar subject so that each part of the law as a whole may be harmonized

---

[11] *Id.*

[12] *Pond v. Maddox*, 38 Cal. 572, 574 (1869).

[13] *People v. Southwell*, 46 Cal. 141, 148 (1873).

10

1 and given effect."[14]  The various statutes blend into each other and
2 are regarding as constituting but a single set of statutes.  Thus,
3 the statutes are not to be treated as antagonistic laws, but parts
4 of one system with effect given to each section.[15]

**PLAIN MEANING OF WORDS IN DETERMINING THE ORDINANCE**

6      The Plaintiff-Debtors argue that the plain meaning of the
7 Agritourism Ordinances is that their commercial golf course is
8 legal on property zoned for General Agriculture and Agriculture
9 Preserve.  Their analysis begins with the Plaintiff-Debtors arguing
10 that a plain meaning of Zoning Ordinance 17.060.0151 allows
11 defining Agritourism as "an enterprise located on a working farm,
12 ranch, or other agricultural operation . . . for the enjoyment and
13 education of visitors, guests, or clients, that generates income
14 for the owner/operator."  Therefore, Plaintiff-Debtors conclude,
15 this definition includes a golf course built on an olive farm.
16 Plaintiff-Debtors then turn to the second sentence of the
17 definition stating that Agritourism "refers to an act of visiting
18 a working farm/ranch or to any agricultural/horticultural operation
19 for the purpose of enjoyment or education or active involvement of
20 the farm/ranch or agricultural operation that also adds to the
21 economic viability of the agricultural operation."

22      For the Plaintiff-Debtors, a golf course operated on an olive
23 farm which markets olive oil to golfers is clearly within this
24 definition.  It is contended that because the definition of
25 Agritourism includes a non-exclusive list of examples of

27      [14] *People v. Frawley*, 82 Cal. App. 4th 784, 789   (2000),
citing *Franchise Tax Board v. Superior Court*, 63 Cal. App. 4th 794,
28 799 (1998).

      [15] *Id.,* 790.

Agritourism enterprises, and because the Ordinance defining Agritourism states that it is a non-exclusive list, then the Zoning Ordinances which define Agritourism also provide the authorization to use property zoned Agriculture, thereby making it something other than a permissive use statute.

Ordinance 17.06.0151 is a definitional provision, not a portion of the Ordinances providing for how property may be used in the County.   This definition is determined and applied in the context of the entire body of Ordinances, as are the Ordinances which specify the uses for property zoned to Agriculture.   The Plaintiff-Debtors are incorrect in asserting that the definition of Agritourism is the beginning and end of the inquiry of how property zoned Agriculture may legally be used in Calaveras County.

The court clearly understood Plaintiff-Debtors' argument that the plain meaning of the words in Ordinance 17.06.0151 defining Agritourism meant that the Plaintiff-Debtors could construct and let their limited liability company operate a commercial golf course on the Property.   When issuing the Memorandum Opinion and Decision in this Adversary Proceeding, the court did not agree with that contention.   The court does not agree with that contention in this Motion for New Trial or Amended Judgment.

The definition begins with "an enterprise located on a working farm, ranch or other agricultural operation or agricultural plant/facility . . . "   First, there must be a working agricultural operation, which in this case is asserted to be the olive orchard. Second, the enterprise must be conducted for the enjoyment and education of visitors, guests or clients.   In this Adversary

1  Proceeding, the golf course operation is asserted to be conducted
2  for the enjoyment and education of visitors, guests, or clients.[16]

3      The Plaintiff-Debtors' contention that a golf course complies
4  with the plain meaning of the words of this Ordinance breaks down
5  with the second sentence of Ordinance 17.06.0151 - Agritourism is
6  the act of visiting a working farm /ranch or any agricultural,
7  horticultural or agricultural operation for the purpose of
8  enjoyment, education or active involvement "in the activities of
9  the farm/ranch or agricultural operation that adds to the economic
10 viability of the agricultural operation." Taken on its face, the
11 plan language of this Ordinance requires that the enterprise have
12 the visitor, guest, or client engage in "the activities of the
13 farm/ranch or agricultural operation."

14      The day of the trial the Plaintiff-Debtors asserted a new
15 argument that the golf course itself was an "agricultural
16 operation" which was permitted on the property, without regard to
17 whether it was Agritourism. That contention was rejected on its
18 merits by the court and is not asserted in connection with this
19 Motion. Rather, the substance of the argument presented is that
20 the Plaintiff-Debtors can engage in any other non-agricultural
21 enterprise as Agritourism on the property, so long as there is some

22

23      [16]  On its face, this definition requires that the enterprise be
24 for both the "enjoyment **and** education" of the visitors, guests, or
   clients. [Emphasis added.] Use of the word "and" is in the
25 conjunctive and requires that the enterprise for both enjoyment and
   education. *In re C.H.*, 53 Cal. 4th 94, 101-102 (2011). No argument is
26 made in the present Motion, and no evidence was presented at trial,
   how the commercial golf course was educational for the visitors,
27 guests, or clients. If the court were to conclude the analysis at
   merely the limited "plain language" as directed by the Plaintiff-
28 Debtors, they have not provided evidence that the commercial golf
   court is both for the enjoyment <u>and</u> education of the guests, visitors,
   or clients.

1   agricultural operation (the olive trees). If the court's analysis
2   stopped at this point, the Ordinance would only allow such
3   enterprises by which the visitor, guest, or client engaged in the
4   ongoing farm/ranch or agricultural operation. Examples which come
5   to mind are having students participate in the milking operation at
6   a dairy or sowing seeds for the planting of a crop. However, the
7   Ordinance does not stop with just the general definition, but the
8   Board of Supervisors provides a set of non-exclusive examples for
9   defining Agritourism.

10      As addressed in the Memorandum Opinion and Decision, two
11  canons of statutory construction apply to this situation.     The
12  first is *noscitur a sociis* ( "it is known from its associates").[17]
13  This canon provides that the meaning of words which are placed
14  together in a statute should be determined in light of the words
15  with which they are associated. *Id.*  This is closely related to
16  *Ejusdem Generis* ("of the same kind"), a canon which directs that
17  where general words follow specific words, or specific words follow
18  general words in a statutory enumeration, the general words are
19  construed to embrace only things similar in nature to those
20  enumerated by the specific words. *Id.* at p. 181 (looking to
21  examples enumerated in the statute to understand the scope of the
22  ambiguous portion of the statute and narrowing that scope according
23  to the examples provided).    The court utilized these examples in
24  determining whether the commercial golf course is Agritourism.

25      Rather than considering these specific examples in determining
26  the scope of Agritourism, the Plaintiff-Debtors ignore them and

27

28      [17] *Cal. Farm Bureau Fed. v. Cal. Wildlife Conservation Bd.*,
    143 Cal. App. 4th 173 (2006).

14

1  rush to find that the general language of the definition overrides
2  the actual Zoning Ordinances which provide for the uses of
3  property.  The Plaintiff-Debtors ignore the language of the
4  Ordinances and the canons of statutory construction, jumping to the
5  conclusion that the definition of Agritourism is in conflict with
6  the balance of the Zoning Ordinances and controls.

## CONSIDERATION OF THE SUBSEQUENT ENACTMENT
## OF AGRITOURISM ORDINANCES

9   The Plaintiff-Debtors assert that an error of law occurred
10  because the court failed to take into account that the Agritourism
11  Ordinances were enacted by the Board of Supervisors in 2005, 20
12  years after the balance of the current ordinances were put into
13  place.  The tenor of the contention is that the court should treat
14  the Agritourism Ordinances as free-standing provisions which are
15  not construed in connection with the balance of the Zoning
16  Ordinances.  This is incorrect, as even subsequent enactments are
17  interpreted as part of the statutes as a whole.

18  When enacted in 2005, the definition of Agritourism was added
19  to the existing definitions set forth in Chapter 17.06, which
20  includes a total of 211 definitions to be used with respect to the
21  Zoning Ordinances.  Ordinance 17.06.0010.  The use of property
22  zoned Agriculture was added to Ordinances 17.16.020 (titled
23  "Permitted uses" for General Agriculture zoned property) and
24  17.18.020 (titled "Permitted uses" for Agriculture Preserve zoned
25  property).

26  The addition for Agritourism use to Ordinance 17.16.020 is
27  placed as subparagraph "a" to paragraph 21 (Recreation and
28  education) of 24 paragraphs specifying permitted uses, each with

15

1  multiple subparagraphs (which total 57 specified permitted uses)
2  for property zoned General Agriculture.  Within paragraph 21 for
3  Recreation and education, there are ten subparagraphs of permitted
4  uses, including Agritourism.

5      For property zoned Agriculture Preserve, the addition for
6  Agritourism use is stated in Ordinance 17.18.015 (titled "Permitted
7  uses") and placed as subparagraph "a" to paragraph 21 (titled
8  Recreation and education).  Within paragraph 21 there are nine
9  Recreation and education uses listed, including Agritourism.
10 Ordinance 17.18.020 specifies a total of 57 permitted uses on
11 property zoned for Agriculture Preserve.

12     These permitted uses do not include the additional 45
13 conditional uses on General Agriculture property and 41 conditional
14 uses on Agriculture Preserve property.  In all, the Zoning
15 Ordinances specify 200 permitted and conditional uses (four of
16 which are Agritourism).

17     When subsequently enacted, the Board of Supervisors embedded
18 the Agritourism uses within the existing statutory scheme, making
19 them four of many permitted and conditional uses.  While enacted
20 subsequently, the Board has made the permitted Agritourism use part
21 of the comprehensive statutory scheme for property zoned
22 agriculture.  In enacting the Agritourism uses, the Board of
23 Supervisors did not enact provisions which conflicted with the
24 existing Ordinances, but added another use.  The subsequent
25 enactment of the subparagraphs providing for Agritourism as one of
26 many potential permitted and conditional uses of property zoned to
27 Agriculture does not result in this additional provision a zoning

28

16

1 ordinance being a provision separate and apart from the
2 comprehensive zoning scheme.

3 **Permitted Uses**

4 While admitting that the Zoning Ordinances were enacted as
5 part of a permitted use and conditional use statutory scheme, the
6 Plaintiff-Debtors contend that the Agritourism Ordinances can be
7 interpreted in a vacuum outside of this permitted use and
8 conditional use scheme. Such a contention ignores the plain
9 language of Ordinances 17.16.010 et seq. (property zoned General
10 Agriculture) and 17.18.010 et seq. (property zoned Agriculture
11 Preserve). For property zoned General Agriculture, Ordinance
12 17.16.020 is titled "Permitted Uses," and enumerates the permitted
13 uses of such property. The first listed permitted use is
14 Agricultural Operations and under the 21st permitted use,
15 Recreation and education, is listed "Agritourism activities not
16 otherwise specified (less than 75 persons on-site at one time).
17 For property zoned Agriculture Preserve the same permitted use
18 structure exists. Ordinance 17.18.020 is titled "Permitted uses,"
19 with the first permitted use being Agricultural Operations and
20 under the 21st permitted use, Recreation and education, the
21 permitted used of "Agritourism activities not otherwise specified
22 (less than seventy-five persons on-site at one time)."[18]

23 Contrary to Plaintiff-Debtors' contention that Agritourism is
24 a free-standing right to use property, and not a permitted use to
25 be determined under the General Agriculture and Agriculture

26

27 [18] Conditional uses for both General Agriculture and Agriculture
28 Preserve include "Agritourism activities not otherwise specified (more
than seventy-five persons on-site at one time." Ordinances 17.16.030
A. 1, 11. a., and Ordinance 17.18.030 a.1., 11.a.

17

1  Preserve  Ordinances,  the  Ordinances  expressly  state  that
2  "Agritourism activities **not otherwise specified**" are permitted
3  uses. [Emphasis added.] Only by considering the other uses as
4  permitted under the Ordinances can one determine the scope of
5  permitted Agritourism.  The Agritourism Ordinances are part of the
6  comprehensive Zoning Ordinance scheme enacted by the Calaveras
7  County Board of Supervisors.

8  **Consideration of Purpose of Agritourism**
   **and Drafting of the Agritourism Ordinances**

9
10      The Plaintiff-Debtors contend that part of the court's error
   was not to consider the purpose of the Agritourism Ordinance —
11
   generating additional revenue to assist agricultural operations in
12
   tough economic times.  The court did not ignore this purpose, but
13
   did not agree with the Plaintiff-Debtors' interpretation that a
14
   permitted use for Agritourism allowed the property owner to
15
   construct and operate whatever business enterprise on the property
16
   so long as it generated revenue.
17
18      The Plaintiff-Debtors repeat their contention made at trial
   that by enacting the Agritourism provisions the Board of
19
   Supervisors intended to allow owners of property zoned agriculture
20
   to engage in other enterprises which will generate income.  Based
21
   on the evidence presented, this is partially correct.  It was
22
   undisputed that the provisions for Agritourism were added to the
23
   existing Zoning Ordinances to encourage and authorize the owners of
24
   property zoned to agriculture to have a broader range of money-
25
   generating activities to help support their farming operations.
26
   There was dispute as to the Plaintiffs' contention that the
27
   Agritourism provisions allowed the landowner to engage in whatever
28
   enterprise he or she wanted on the property, so long as there was

1  some farming or ranching activity and the additional enterprise
2  generated money.

3      The Plaintiffs-Debtors' arguments at trial and repeated in
4  this Motion seek to have the Agritourism provisions operate in
5  isolation from the Zoning Ordinances, in which the Agritourism
6  provisions are embedded as a subpart of a paragraph within a
7  section.[19]  In its ruling after trial, the court considered the
8  Agritourism provisions as written and as part of the Zoning
9  Ordinances.  The court considered that these provisions were added
10 and provide for a broader use of the property than originally
11 permitted under the Zoning Ordinances.  The court concluded that
12 the commercial golf course was not Agritourism as defined under the
13 Zoning Ordinances.  The arguments represented in this Motion for
14 New Trial are no more persuasive than they were when presented at
15 trial.  Providing a new use to generate revenue on property zoned
16 for Agriculture does not mean that the owner can engage in whatever
17 uses they want, in disregard of the language in the Ordinance and
18 the comprehensive statutory scheme.[20]

19

20     [19]  As discussed in this Decision, Agritourism is one of a number
       of permitted activities, allowed as permitted recreation and education
21     on property zoned General Agriculture or Agriculture Preserve.

22     [20]  In closing argument at trial counsel for the County made the
       colorful illustration that accepting Plaintiff-Debtors' argument on
23     this point would mean that a landowner could elect to construct and
       operate a house of ill-repute as Agritourism so long as it generated
24     revenue for the owner.   While the court did not interpret this
       colorful argument to be that activities otherwise illegal under state
25     law would be made legal by Plaintiff-Debtors' interpretation of this
       Zoning Ordinance, such interpretation would allow an owner to do
26     anything else on the property, even activities which required
       conditional use permits or were not permitted as part of the
27     comprehensive Zoning Ordinances.   Under the Plaintiff-Debtors'
       scenario, the owner of property zoned General Agriculture or
28     Agriculture Preserve could construct a car race track, demolition
       derby course, 20 story destination resort and spa, avenue of
       nightclubs, adult entertainment theaters, and bars, regional power

                                   19

**Consideration of the Use of**
**Agriculture Property by Ironstone Vineyards**

The Plaintiff-Debtors contend that part of the court's error was in not considering that Ironstone Vineyards had built an amphitheater and held revenue generating "rock concerts" on property zoned agriculture in Calaveras County. This contention of error includes an assertion that the court's ruling manifests a "bias against multi-million dollar golf courses" and a "bias in favor of multi-million dollar amphitheater and concerts." As stated in the Motion, evidence was presented that some of the County representatives thought that such use was illegal, but no action was taken by the County against Ironstone Vineyards.

The court did consider the use of property by Ironstone Vineyards and the evidence of such use which was actually provided to the court. With respect to the use, several witnesses testified that some concerts were held and an amphitheater had been constructed. The court did not have evidence by which it could determine the nature, scope and significance of the construction or concerts. While in the Motion reference is made to there being "thousands of people and cars coming to concerts," the Plaintiff-Debtors did not present the court with sufficient evidence of the scope of that operation for any such finding.

The Plaintiff-Debtors contend that the County has not enforced the Ordinances to prevent Ironstone Vineyards from constructing the amphitheater and conducting the concerts, and such shows that such activities are permitted as Agritourism, and therefore the

plant, dam and reservoir, junk yard, or contaminated waste storage facility, all based on that use generating revenue to supplement whatever farming operation exists.

20

1  commercial golf course is permitted as Agritourism.    The court
2  considered this one use by one owner of one other property zoned
3  agriculture, but did not find it determinative as does the
4  Plaintiff-Debtors. Out of the entire County, the Plaintiff-Debtors
5  directed the court to this one property for a use which is
6  contended to show that the Plaintiff-Debtors' commercial golf
7  course is a permitted use as Agritourism.    Having given it due
8  consideration, it did not alter the court's final determination as
9  to whether the commercial golf course was a permitted use as
10 Agritourism.[21]

11        In addition to the quality and scope of evidence provided
12 concerning the use of property by Ironstone Vineyards, the court
13 was not presented with any basis for determining that the
14 construction and use of the property were permitted Agritourism
15 uses.    The Zoning Ordinances provide a detailed list of permitted
16 and conditional uses for property in the County.    Agritourism is a
17 subcategory of the Recreational and educational permitted and
18 conditional uses.    The court does not know which, if any, of such
19 other permitted uses may have been considered (if any) by Ironstone
20 Vineyard and the County.

21        Woven in the Plaintiffs-Debtors' arguments is the contention
22 that since the County has let Ironstone Vineyards operate its
23 concerts, and even if they violated the law, the Plaintiff-Debtors
24 should be able to construct and have their limited liability
25 company operate a commercial golf course because Ironstone

26

27       [21]   In considering the evidence presented, the court considered
28 the cumulative effect of the contentions raised by the Plaintiff-
   Debtors, not merely considering each in isolation.    The court
   addresses each in this ruling separately for clarity of discussion.

1  Vineyards has been allowed to violate the law.  While not accepting
2  the "if he can break the law, then we can break the law" version of
3  this argument, the court did consider whether this one use cited by
4  the Plaintiff-Debtors on one other property weighed in favor of the
5  Plaintiff-Debtors' interpretation of the Ordinance.  In the end it
6  did not.

7      It is well established that merely failing to enforce an
8  ordinance against one person does not invalidate the ordinance.  As
9  discussed in *Wade v. San Francisco*, 82 Cal. App. 2d 337, 339
10  (1947), merely lax enforcement of a law or ordinance does not cause
11  the enforcement of the statute to violate a constitutional right.[22]

12      As stated in the Memorandum Opinion and Decision, the court
13  has not been presented with the task of determining whether
14  Ironstone Vineyard's use of  its property is in violation of the
15  County  Zoning  Ordinances.     To   the   extent   that   County
16  representatives have either been confused or in disagreement as to
17  the scope of Agritourism, this ruling provides some guidance.  No
18  prior judicial decisions concerning these Zoning Ordinances were
19  presented to the court.   Having prevailed and obtaining this
20  ruling, the County has established how it interprets and applies
21  the Zoning Ordinances relating to Agritourism.   If it fails to
22  properly, fairly, and equally apply these ordinances to the
23  property owners in the County, there are political consequences and
24  legal actions which may be taken by other government officials,
25  grand jury, and the public.

26

27

28
   [22]    *See Town of Atherton v. Templeton*, 198 Cal. App. 2d
   146,154 (1961).

1   The court did not find, and does not find, the use of property
2   by one other landowner, Ironstone Vineyards, to determine either
3   (1) what constitutes Agritourism or (2) a voiding of the Zoning
4   Ordinances.

5   **Opinions as to Construction of the Statute**

6   The Plaintiff-Debtors assert that the court's error includes
7   not adopting the interpretation of  Agritourism as proffered by
8   Kenneth Churches.   As stated in the Motion and the Memorandum
9   Opinion  and  Decision,  Mr.  Churches  is  the  former  UC  Davis
10  Cooperative  Extension  Branch  in  Agriculture  Farm  Advisor  for
11  Calaveras County.   He worked with the agricultural landowners in
12  drafting proposed amendments to provide for Agritourism.    This
13  group of landowners submitted the proposal to the County, which was
14  processed through the Planning Department and amendments providing
15  for a permitted Agritourism use was adopted by the Board of
16  Supervisors.   Neither Mr. Churches nor the group of landowners who
17  proposed the Agritourism provisions are the governmental officers
18  who enacted those provisions.

19  As a first point, just as the court has rejected the Board of
20  Supervisors' after-the-fact during litigation determination that
21  the commercial golf course was not Agritourism, neither is Mr.
22  Churches' opinion as to what he and the landowners subjectively
23  intended by their proposal to the County determinative.    Mr.
24  Churches was not and is not a supervisor and does not speak for the
25  County in what it intended in adding the Agritourism provisions to
26  the Zoning Ordinances.   His testimony could well be phrased as
27  being that the landowners hoped to get enacted an Ordinance
28  allowing Agritourism with a definition so general and broad that

1  they could do whatever they wanted with their property free of any
2  land use restrictions.    Such may well be the dream of many
3  landowners.    The court was not presented with sufficient evidence
4  that such was intended by the Board of Supervisors or that the
5  language of the Ordinance renders such a result.

6      The court addressed this intentional, general language which
7  insured that questions as the one now before the court would arise.
8  The court considered Mr. Churches' opinion and testimony as to how
9  the language was drafted, presented to the Board of Supervisors,
10 and ultimately adopted.    The court did not find that testimony
11 persuasive so as to conclude the Plaintiff-Debtors' interpretation
12 of the Ordinance was correct.

13                    **SUFFICIENCY OF ORAL ARGUMENT**

14      The Plaintiff-Debtors contend that error exists because the
15 court allowed the parties ten minutes of oral argument after the
16 trial.    The trial in this Adversary Proceeding was scheduled for
17 two days and could have been concluded in two days.    The Bankruptcy
18 Court utilizes the Alternative Direct Testimony procedure by which
19 each party prepares Direct Testimony Statements (declarations) for
20 the non-hostile witnesses for their respective cases in chief.
21 Local Bankr. R. 9017-1.    This allows each attorney to carefully and
22 clearly lay out the witness' testimony, including the foundation
23 for exhibits presented at trial.    Evidentiary objections are
24 presented prior to trial, the court reviews the Direct Testimony
25 Statements and Exhibits prior to the trial, oral argument is
26 presented for any evidentiary objections, and those matters are
27 promptly resolved.    The witnesses take the stand ready to adopt
28 their respective Direct Testimony Statements and begin their direct

1 testimony, without having to repeat the basic information relating
2 to their background, experience, and establishing a foundation for
3 their testimony and exhibits.

4 No request for additional time for further argument was made
5 by the Plaintiff-Debtors until weeks after the trial and the court
6 had announced that it reached a decision in this Adversary
7 Proceeding at a status conference in the Chapter 11 case. At the
8 request of Plaintiff-Debtors' counsel, the court advised the
9 parties of the ruling, which was being issued in writing. Only
10 after learning that they had not prevailed did the Plaintiff-
11 Debtors advise the court that they wanted to make further argument.

12 The court's opinion as to the sufficiency of time for oral
13 argument has not changed from its ruling on the belated request
14 from Plaintiff-Debtors after learning that they had lost at trial.
15 Dckt. 167.    The court incorporates the ruling on that motion as
16 part of this decision, without restating it in its entirety herein.

17 The trial extended to three days in large part due to counsel
18 for the respective parties engaging in extensive argument during
19 direct and cross-examination of witnesses. Given the issues before
20 the court in this Adversary Proceeding, the court permitted counsel
21 to allow each other such leeway. By the close of the case on the
22 third day, the court clearly understood the arguments of each side,
23 including the arguments now restated in the Motion for New Trial.
24 In addition to the arguments presented during and at the end of the
25 trial, the parties filed trial briefs prior to trial.    Further,
26 this Adversary Proceeding has been hotly contested by the parties.
27 By the time of trial, many of the arguments had been presented to
28 the court in connection with a motion to dismiss.

1    The time allowed for oral argument was correct and not in
2  error.    The arguments were clearly presented to the court prior
3  to, during, and after the trial.    The court considered the
4  arguments and contentions by each party in reaching the final
5  decision in this Adversary Proceeding.  As with all trials, at the
6  end of the day someone wins and someone loses, with no amount of
7  repetitive argument changing the decision of the trial court.

8              **COMMENTS OF NON-PARTIES TO THE ADVERSARY PROCEEDING**

9    David and Hedy Hirsch and Roger and Kathy Gunderson, creditors
10  holding  general  unsecured  claims  in  the  Plaintiff-Debtors'
11  bankruptcy case, filed their statements as "parties in interest" in
12  this Adversary Proceeding.  They are not parties to this Adversary
13  Proceeding and are not parties in interest to participate in this
14  Adversary Proceeding.  They did not intervene or otherwise obtain
15  permission from the court to insert themselves in this lawsuit.
16  Merely because they are creditors of the Plaintiff-Debtors does not
17  given them standing to appear in this Adversary Proceeding.

18    Hirsch and Gunderson direct the court to 11 U.S.C. § 1109(b)
19  as the authority for them to appear in this Adversary Proceeding.
20  The express language of this Code section states that a party in
21  interest may "raise and may be heard on any issue in a case under
22  this chapter [11]."    A case under Chapter 11 is commenced by the
23  filing of a bankruptcy petition.  11 U.S.C. § 301 and 302.    An
24  adversary proceeding is not a "case under Chapter 11," but a
25  separate law suit to which only the parties in that action have
26  standing.    Fed. R. Bankr. P. 7001, 28 U.S.C. § 157(a) (federal
27  court jurisdiction for any and all cases under Title 11 and all
28  proceedings arising under Title 11, or arising in or related to a

                                  26

case under Title 11).  In 28 U.S.C. § 157(a) Congress has clearly distinguished between a "case" arising under Title 11 and some other proceeding arising in or related to the "case" under Title 11.  Federal Rule of Civil Procedure 24 and Federal Rule of Bankruptcy Procedure 7024 provide that intervention is the method by which someone inserts themself into an adversary proceeding.

Because of the significance of this decision to the bankruptcy case, for which Hirsch and Gunderson are parties in interest, the court has reviewed the pleading.  The position taken by these four creditors suffers from the same substantive defects as the Plaintiff-Debtors.  They argue that the court has ignored that portion of the definition of Agritourism stating that the examples are a non-exclusive list.  The court did not interpret or apply the list of examples as an exclusive list and limit the definition of Agritourism to only those items.  Instead, the court applied the established canons of construction to consider the correct interpretation of this statute.  The Plaintiff-Debtors and these creditors ignore the canons of statutory construction and given no consideration to the specific examples placed in the Ordinance defining Agritourism.

## CONCLUSION

The court having considered the Motion for New Trial or for an amended judgment, all of the arguments, and the record in this case, the Motion is denied.

This Memorandum Opinion and Decision constitutes the court's findings of fact and conclusions of law pursuant to Fed. R. Civ. 52 and Fed. R Bank. P. 7052.

1    The court shall issue a separate order consistent with this

2  ruling.

3  Dated: January 27 , 2012

4

5                          RONALD H. SARGIS, Judge
6                          United States Bankruptcy Court

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

28

This document does not constitute a certificate of service. The parties listed below will be served a separate copy of the attached document(s).

Janis Elliott
891 Mountain Ranch Rd
San Andreas, CA 95249-9709

Kristin Hagan
1675 Chester Ave #320
Bakersfield, CA 93301

Brett Price
5080 California Ave #250
Bakersfield, CA 93309

Malcolm Gross
1040 S Mt Vernon Ave #G-316
Colton, CA 92324-4228

Kenneth Foley
37 N Main St #209
PO Box 1269
San Andreas, CA 95249

Michael Nemee
9209 Ospital Rd
Valley Springs, CA 95252

Michelle Nemee
9209 Ospital Rd
Valley Springs, CA 95252

Office of the U.S. Trustee
Robert T Matsui United States Courthouse
501 I Street , Room 7-500
Sacramento, CA 95814